PETERSBURG SCHOOL DISTRICT OF NELSON COUNTY, STATE OF NORTH DAKOTA, v. LEVI PETERSON.

Opinion filed June 9, 1905.

**Eminent Domain — Defendant's Costs.**

1. A landowner who resists the taking of his land for public purposes upon a failure to agree upon the value thereof, and recovers judgment therefor, is entitled to recover his taxable costs in the action.

**Same.**

2. Under section 14 of the constitution, prohibiting the taking or damaging of private property for public use without just compensation being first made or paid into court for the owner, it would be partially nullifying such provision if the compensation awarded him be diminished by his being compelled to pay the taxable costs.

**School House Sites — Selection.**

3. Under section 701, Rev. Codes 1899, providing that the board may call a meeting of the voters in a school district to select a site for a new school house, a selection of a site by such voters, describing the site, "For locating a new school house on the hill at the south end of Sixth street, in Peterson's field," is sufficiently definite on which to base a definite location of the site by the board.

**Voters Select by General Designation, Not Definite Description.**

4. Under said section 701, Rev. Codes 1899, the voters are required only to select by a general designation, and not by definite description.

**Precise Limits and Quantity of Land Are in the Discretion of the School Board.**

5. Under said section 701, Rev. Codes 1899, the board is required to locate the site upon the land selected by general designation of the voters by fixing its boundaries, and it is vested with discretion as to the precise limits of the site selected by the voters, as well as to the amount of land taken, within the statutory limit.

**Condemnation Proceedings — Statute Liberally Construed.**

6. In condemnation proceedings based on the right to acquire land for public purposes under the power of eminent domain, if a statute confers such power, it will be liberally and reasonably construed, so as to make its purpose effective.

**Rebuttal — Discretion of Court.**

7. The calling of a witness by a plaintiff in rebuttal who gives testimony that pertains to his main case is not necessarily prejudicial, but is a matter resting largely in the discretion of the trial court.

**Instructions.**

> 8. Instructions on the question of what facts may be considered by the jury in determining the value of the property involved considered, and *held* not erroneous.

Appeal from District Court, Nelson county; *Fisk, J.*

Proceedings by the Petersburg school district of Nelson county against Levi H. Peterson to condemn land. Judgment for plaintiff, and defendant appeals.

Modified.

*Guy C. H. Corliss,* for appellant.

The voters never selected the site sought to be condemned. The proposition submitted was too indefinite as a designation. The boundaries were subsequently fixed by the board. The school board has no discretion in the matter, but must obey the command of the voters in selecting a site, and are without power to supplement by their own judgment and action the incomplete action of the voters. Farmers & Merchants National Bank v. School Dist., 6 Dak. 255, 42 N. W. 767; Seibert v. Botts, 57 Mo. 430; Benjamin v. Hull, 17 Wend. 437, 81 Ill. App. 560, 79 Ill. App. 359; Greenwood v. Gmelich, 51 N. E. 565; State v. City of St. Anthony, 10 Minn. 345, Township Board of Education v. Carolan, 55 N. E. 58; Lighton v. School Dist., 31 Atl. 899.

The statutes relating to eminent domain are strictly construed in favor of the land owner. Lewis on Eminent Domain, sections 253, 154; Fort Ridge Cemetery Ass'n. v. Redd, 10 S. E. 405; 10 Am. & Eng. Enc. Law, 1054.

All conditions precedent to the exercise of the right of eminent domain must be strictly pursued. In re City of Buffalo, 78 N. Y. 362; City v. Daley, 58 Fed. 751; State v. Hemsley, 35 Atl. 795; N. Y. Cable Co. v. New York, 10 N. E. 332; Harris v. Marblehead, 10 Gray 40; 3 Abb. N. C. 668.

The instruction that the jury should not consider anything that may have been done by the defendant in the way of improvement since the commencement of the action, was error. Little Rock, etc., R. Co., v. McGhee, 20 Am. & Eng. R. Cases, 82; King v. Minneapolis Union Ry. Co., 32 Minn. 224; 10 Am. & Eng. Enc. Law, 1161; Mississippi & Rum River Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206.

The judgment is erroneous in that it fails to award costs to the defendant. A citizen's property can only be seized on condition of making a just compensation for it. If obliged to pay costs, where the value of the property is not great, and the litigation protracted and expensive, the land owner, instead of being compensated, will find his expense more than the compensation. Stolze v. Milw. & L. W. Ry. Co., 88 N. W. 378; Gano v. Minneapolis & St. Louis Ry. Co., 55 L. R. A. 267; 2 Lewis on Eminent Domain, section 559; St. Louis, etc., v. Southern Ry. Co., 39 S. W. 471; San Jose A. R. & Ry. Co. v. Mayne, 23 Pac. 522; San Diego Land & Town Co. v. Neale, 25 Pac. 977; Owsley v. Oregon Ry. & Nav. Co., 20 Pac. 782; In re N. Y. U. S. N. B. Ry Co., 94 N. Y. 294; N. H. & N. Co. v. Northampton, 102 Mass. 116.

*Fred A. Kelly* and *Scott Rex,* for respondent.

The ballots were sufficient. They identified the site although not its boundaries. The statute does not require the voter to fix the boundaries.

Parol evidence is admissible to identify the subject matter and apply that which is written to the thing itself. 21 Am. & Eng. Enc. Law, 1119, 1120.

The charge was wholly favorable to appellant and in accordance with the authorities cited by him. Joyce on Damages, sections 2184, 2185, 2190; Gulf, etc., R. Co. v. Burger, 45 S. W. 613; San Diego Land & Town Co. v. Neale, 25 Pac. 977; Chicago, N. & N. Ry. Co. v. Davidson, 31 Pac. 131; 15 Cyc. 715, 724, 726; City of Santa Ana v. Harlin, 34 Pac. 224; Curtin v. Nittany Valley R. Co., 19 Atl. 740; Michael v. Pipe Line, 28 Atl. 204; Esch v. C., M. & St. P. Ry. Co., 39 N. W. 129; Spring Valley Waterworks v. Drinkhouse, 28 Pac. 681; Alexian Bros. v. City of Oshkosh, 70 N. W. 162.

There is no error apparent in the matter of costs. The case is not governed by section 5579, Rev. Codes 1899, when costs follow as a matter of course, but by 5580, and are in the discretion of the court. The objection raised for the first time on appeal cannot be entertained by the appellate court. McKenzie v. Bismarck Water Co., 6 N. D. 361, 71 N. W. 36; Crane v. Forth, 30 Pac. 193; Chicago & N. W. Ry. Co. v. City of Chicago, 35 N. E. 881; Beynon v. Brandywine, etc., Co., 39 Ind. 129; Rabb v. Patterson, 20 S. E. 540, 46 Am. St. Rep. 743; Wisconsin Cent. Ry. Co. v. Kneale, 48 N. W. 248.

MORGAN, C. J.    The defendant appeals from a judgment adjudging that certain described lands belonging to him be condemned as a schoolhouse site upon payment of damages to him assessed by the jury at the sum of $300.   The school board  deemed  it necessary to provide proper school privileges for the district, and thereupon called a meeting of the voters of the district to vote upon the selection and purchase of a site for a schoolhouse, as provided by section 701, Rev. Codes 1899.   At such meeting a majority of the votes cast was in favor of a site described as follows: "For locating a new schoolhouse on the hill at the south end of Sixth street, in Peterson's field."   After the special meeting or election was held, the school board met, and adopted the following resolution: "Resolved, that the boundaries of the site for the new schoolhouse on the location adopted at special election held May 21st, 1904, be fixed as follows."   The precise description of the site by metes and bounds is then given,  and  embraces  a tract comprising two acres—included in it, the hill in Peterson's field, at the south end of Sixth street.   After definitely locating the site the board interviewed defendant as to the purchase of that site, but there was a failure to agree upon the price.   The board thereupon ordered that condemnation proceedings be instituted for the purpose of acquiring that site under the power of eminent domain.   This action was thereupon regularly instituted for that purpose, and, in answer to a complaint setting forth  a  cause of action against him, the defendant answered, setting forth facts that  pertained  only to the value of the land to be condemned. A jury was impaneled, but no question was submitted to it, except the one as to the value of the two acres sought to be condemned as a site for a schoolhouse.   The jury found the value of the land to be $300.   The defendant appeals from the judgment adjudging that this land be condemned as prayed for upon payment of that sum to the defendant.

There are thirteen assignments of error in the record, but all of them are abandoned in the argument, except four, which we will consider in the order that they are presented in the brief filed:

The appellant contends that the voters of the school district did not select a site for the schoolhouse as required by section 701, Rev. Codes 1899.   The contention is that the voters did not particularly specify or describe the site desired—in other words, that the designation, "For locating a new school house on the hill at the south end of Sixth street, in Peterson's field," is too indefinite,

and therefore insufficient on which to base condemnation proceedings. Section 701, Rev. Codes 1899, provides that "whenever in the judgment of the board it is desirable or necessary to the welfare of the schools in the district or to provide for the children therein proper school facilities, * * * the board shall call a meeting of the voters in the district * * * to vote upon the question of the selection, purchase, exchange or sale of a school house site. * * * Said election shall be conducted and votes canvassed in the same manner as at the annual election of school officers. * * * If a majority of the voters present at such meeting shall by vote select a schoolhouse site * * * the board shall locate, purchase, exchange or sell such site * * * in accordance with such vote." Section 702 provides, among other things, that "should the owner of such real property refuse or neglect to grant and convey such site, a site for such school house may be obtained by proceedings in eminent domain as provided in the Code of Civil Procedure." Section 703 provides that if upon the organization of a school district in cases therein particularly described, "and if no suitable room for such school can be leased or rented the board shall call a meeting of the voters of the district for the selection and purchase of a school house site therefor, and the purchase or erection of a school house as provided by section 701. If at such meeting no such site is selected, * * * the board shall select and purchase a school house site, and erect, purchase or move thereon a school house," etc. Under these provisions it seems clear to us that the voters are not required to select a site except by general designation. Under section 701 it is evident that the site to be selected by the voters and the site to be thereafter located by the board are not necessarily to be described by the same language. To select is to pick out or choose. It signifies a choice of one out of more than one. To locate is to select by fixed boundaries. The word "site" does not of itself necessarily mean a place or tract of land fixed by definite boundaries. All that section 701 contemplates is that the voters shall select the site in a way that the board can determine what place has been chosen. That having been done, its definite location is to be made by the board. It is significant that the word "locate" is not used in the section in reference to the act of voting for a site by the voters, but is used in reference to the action of the board thereafter in carrying out the wishes of the voters. The statute should receive a reasonable construction. To construe it that the voter must precisely describe the tract would

render its provisions difficult to be carried out. It would require each voter to provide himself with a technical description, which could not be done, in many cases, without the services of a surveyor. Such a construction of the law would make it impracticable. The language used excludes such a construction when all its provisions are considered together. Appellant contends that the section must be strictly construed, as it pertains to the power of eminent domain. We. cannot concede the contention to be true in all respects. When the question to be determined is whether a statute confers the power to exercise the right of eminent domain, then the statute must be strictly construed. But strict construction cannot be involved in the matter of carrying out the provisions of a statute that plainly confers the power of eminent domain. The rule is well stated in section 255, Lewis on Eminent Domain (2d Ed.), as follows: "In determining whether statutes confer the right to exercise the power of eminent domain, the rules of strict construction are to be applied. But when. the power has undoubtedly been conferred, then, in so far as it attempts to define the location or route, it is to receive a reasonable rather than a strict construction. It is against common right that a person or corporation should have the power, but having the power, it is for the general good that they should not be hampered or embarrassed by a narrow and technical interpretation of it." See, also, Chesapeake & O. Canal Co. v. Key, 3 Cranch, C. C. 599, 5 Fed. Cas. 563. The designation by the voters was sufficiently specific, and warranted the board in definitely locating a site comprising two acres at the end of Sixth street, on the hill in Peterson's field. The hill, the end of Sixth street and Peterson's field are fixed points. How large the site shall be, within the statutory limit, and its definite location, are matters to be determined by the board after the voters have pointed out by general description the place desired. The following authorities have a close bearing on the question: Shires v. Irwin, 87 Ill. App. 111; Newell v. Hancock, 67 N. H. 244, 35 Atl. 253; Wilbur v. Woolley, 44 Neb. 739, 62 N. W. 1095; Moore v. State, 9 Kan. App. 489, 58 Pac. 1004; Wiggin v. Exeter, 13 N. H. 304; Packard v. County Commissioners, 80 Me. 43, 12 Atl. 788; State v. Northrop, 18 N. J. Law, 271.

The court gave the following instruction to the jury: "You should fix the value of these two acres as of the date of this trial, but should not take into consideration anything that may have been done by defendant in the way of improvement in the property

since the date of the commencement of the proceeding; that is, since the 9th day of June, 1904." Defendant excepted to this instruction, and claims that the jury may have been misled by the giving of it. The evidence showed that the defendant had platted that portion of his land as an addition to the village of Petersburg after the proceedings were begun, and such addition included the two acres in question. The instruction is in strict accordance with the statute which provides that "no improvements put upon the property subsequent to the date of the service shall be included in the assessment of compensation or damages." Hence, if platting of property for residence or business purposes be considered as improvement of the property, that fact could not be considered by the jury, if done after the action was commenced. The objection of the defendant to this instruction is that by it the jury was told that they could not consider the value of the property for any other purpose than farming, and that it excluded from the jury any consideration of its value as residence property. The instruction itself cannot be construed as so directing the jury. If the jury might have taken the instruction as so saying, if standing, alone, the other portions of the charge were so explicit on this question that they could not have misunderstood the rule to be followed in fixing the value of the tract. The jury was told that they should take into consideration "its value either for farming purposes, or for platting into lots and blocks, or for any other purpose which the evidence in the case may show it to be suitable and valuable for." The following instructions were also given: "If the land possesses a value for residence purposes when platted into building lots, in view of its situation with reference to the town of Petersburg, the defendant is entitled to the fair value of the land for such purpose, although at the time of the commencement of these proceedings the land had not been platted for such purpose." In view of these subsequent instructions, the jury could not have mistaken the meaning of what was said on the question of not considering improvements on the land after the proceedings were commenced.

The contention is advanced that the evidence does not sustain the finding of the jury that the market value of the land at the time of the trial was only $300. There was a wide discrepancy in the evidence on the question of value as given by the witnesses. There is competent evidence in the record that the value of the land was much less than that fixed by the jury, and evidence

that its value was more than was awarded. In view of this conflict, the verdict must stand. It was peculiarly a question for determination by the jury, and there is evidence amply sustaining the verdict.

Two witnesses were recalled, and gave their estimate of the value of the land, concerning which they were not examined when first called. This is claimed to be a prejudicial error. Conceding that it was irregular, and that the matter of the value of the property was a matter to be proved by plaintiff as a part of its main case, we cannot sustain the contention that it was a prejudicial error. Such matters rest largely in the discretion of the trial court. Its action in this instance was not an abuse of discretion.

The judgment did not award taxable costs to the defendant or to the plaintiff. The defendant claims that he is entitled to such costs. He did not make any motion to that effect, nor in any way bring the matter to the attention of the trial court, so far as the record shows. The statute which provides for taking and condemning property for public purposes under the power of eminent domain does not expressly provide for costs in favor of either party. Section 5972, Rev. Codes 1899, being a part of the eminent domain act, provides that "except as otherwise provided in this chapter the provisions of this Code relative to civil actions are applicable to and constitute the rules of practice in the proceedings mentioned in this chapter." It is contended that this section makes the general statute relative to costs applicable to condemnation proceedings. We think that such would be a strained construction of the section. However, in our view of the law applicable to the case, the construction to be placed upon that section becomes unimportant, as the result will be the same. The conclusion that we have reached is that the defendant was entitled to his taxable costs, although no statute authorizes such allowance. This is based upon section 14 of the constitution, which reads as follows: "Private property shall not be taken or damaged for public use without just compensation having first been made to or paid into court for the owner," etc. Section 5955, Rev. Codes 1899, is to the same effect. To hold that the owner must pay his own costs in resisting attempts to take his land against his consent, without first paying adequate and just compensation therefor, would nullify to a certain extent this constitutional guaranty, and result in giving him less than just compensation for his property. The constitutional provision means that he shall receive

just compensation for his property, and not that the just compensation assessed by a jury shall be diminished to the extent of his costs. The provision was designed for the benefit of the landowner, and should be construed so as to give him its benefit to the full extent. Many authorities so hold. In Dolores No. 2 Land & Canal Co. v. Hartman, 17 Col. 138, 29 Pa. 378: "The undeniable intent of this provision is to secure the landowner whose property is taken against his will a fair compensation therefor. It cannot have been the purpose of the constitutional convention to require payment by the owner of costs reasonably incurred in the proceedings whereby his premises are taken. In some instances such costs will amount to nearly or quite as much as the compensation awarded. But if the owner must disburse for costs the money received for his land, the compensation cannot be regarded as 'just,' within the meaning of the constitutional provision." In Stolze v. Milwaukee & L. W. Ry. Co., 113 Wis. 44, 88 N. W. 919, 90 Am. St. Rep. 833, it was said: "It cannot have been the purpose of the framers of the Constitution that a person compelled to surrender his property for public uses shall have any less as compensation therefor than a full equivalent, measured by all reasonable rules. That must include all necessary expenses incurred by him in the enforcement of his rights which are taxable according to law. He must have in the end a full, just compensation for his property. It must not be diminished by any costs reasonably incurred in condemnation proceedings or in collecting the award which are ordinarily taxable, by the rules of law, in favor of the prevailing party in an action or proceeding to make his judicial remedy effective. That is the true constitutional measure of his rights." In Epling v. Dickson, 170 Ill. 329, 48 N. E. 1001. speaking of the same question, it was said: "Where private property is taken or damaged for public use, just compensation cannot be made to the property owner if he is compelled to proceed in the courts for his just rights at his own costs. The costs in the present case following the several judgments. They were a part and parcel of the several judgments, and we see no reason why appellants were not entitled to a decree for the costs, as well as the rest of their judgments." See, also, Lewis on Eminent Domain (2d Ed.) section 555, and cases cited; San Francisco v. Collins, 98 Cal. 259, 33 Pac. 56.

The respondent contends that, this question not having been raised in the district court, it is now too late to raise it. The

point pertains to the judgment which should have provided for appellant's costs on the trial. Hence it is properly the subject of an appeal, and was not waived in any way at the trial. If the matter had been called to the attention of the learned trial court by a motion to allow taxable costs, we have no doubt that the motion would have been granted. The judgment will therefore be modified, without costs to either party on the appeal.

The district court is directed to modify the judgment by the allowance of statutory costs after they have been taxed by the clerk in the usual manner in civil actions.

Modified and affirmed. All concur.